IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

TOMSETH, *et al.*,

Case No. 6:17-cv-02017-AA
**OPINION & ORDER**

Plaintiffs,

v.

UNITED STATES,

Defendant.

_____

Aiken, District Judge:

Husband and wife plaintiffs Matthew Tomseth and Diana Tomseth ("Plaintiffs") sued the United States for a $2,304,799 tax refund, plus statutory interest. They allege that the United States collected these taxes based on an incorrect interpretation of certain tax provisions that governed the shareholder distributions Plaintiffs received from three Les Schwab tire companies. The parties have filed a joint stipulation of facts and cross motions for summary judgment. For

the following reasons, the United States' motion is granted in part and denied in part, and Plaintiffs' motion is denied as moot.

## BACKGROUND

Plaintiffs are shareholders in three family-owned Les Schwab Tire corporations: Les Schwab Warehouse Center, Inc. ("LS Warehouse"), Les Schwab Tire Centers of Washington, Inc. ("LS Washington"), and Les Schwab Tire Centers of Portland, Inc. ("LS Portland") (collectively, the "Corporations"). Throughout their history, these Les Schwab tire companies toggled between operating as S-corps and C-corps to use each designation's tax benefits.

S-corps generally pay a single level of tax because their shareholders can elect to make the corporation a pass-through entity for tax purposes. This allows the S-corp to pass its income directly to its shareholders on a pro rata basis, which the shareholders would then record on their individual tax returns. By contrast, C-corps are often said to be subject to "double-taxation" because their income is first taxed at the C-corp entity level and again at a shareholder's ordinary income tax rate if earnings are distributed as dividends.

S-corps sometimes retain their taxed earnings instead of distributing them to their shareholders. 26 U.S.C. § 1368(e) requires these taxed but undistributed earnings to be kept in a separate accumulated adjustments account ("AAA"). But the IRC also allows corporations to toggle between S-corp and C-corp designations so an issue about the status of these taxed but undistributed AAA funds naturally arises. Section 1371(e) provides a partial answer to this issue. It allows for an S-corp's AAA

balance to be distributed tax-free even after it becomes a C-corp as long as the distribution happens within a one-year post-termination transition period ("PTTP"). *See* 26 U.S.C. § 1371(e). In short, it allows distributions up to the value of the AAA balance to escape dividend treatment under subchapter C.

But what if the corporation doesn't distribute all of its AAA within the PTTP; can it distribute the remaining AAA funds tax-free once the corporation reverts to an S-corp? The parties answer this question differently.

Plaintiffs argue that the old AAA balance is still accessible once the C-corp reverts to an S-corp. They interpret the PTTP provisions as placing a temporary bar on accessing the old AAA tax-free only while the corporation remains a C-corp. But once the corporation elects to be an S-corp again, the S-corp can tap back into its old AAA funds and distribute them tax-free. The United States argues that PTTP expiration equals AAA expiration: once the PTTP expires, the old AAA earnings are no longer available for tax-free distribution even if the corporation reverts to an S-corp. In that case, the United States argues that the AAA balance resets to zero after a new S election.

This differing interpretation of the status of AAA funds after the expiration of the PTTP has led to this dispute between the parties. In 2013, Plaintiffs received $9,326,545 in distributions from all three corporations, which the IRS characterized as taxable dividends: $4,313,419 from LS Warehouse, $850,941 from LS Washington, and $4,162,185 from LS Portland. The Corporations were C-corps at the time of the distributions and the distributions were within the PTTP. In previous years,

however, they had twice operated as S-corps and calculated their AAA funds at the beginning of their most recent S-election as the sum of the AAA balances during these two S-periods.

Their history of corporate metamorphosis is dizzying. LS Warehouse was incorporated as a C-corp in 1958. In 1987, LS Warehouse elected to be an S-corp for the first time (the "First S-Period"). It then reelected to be taxed as a C-corp in December 1993. As of December 31, 1993, LS Warehouse had a balance in its AAA of $51,627,736 and distributed $26,743,007 to its shareholders during its PTTP, leaving $24,884,729 of undistributed AAA. LS Warehouse continued as a C-corp from 1994 through 2008 and reelected to be an S-corp on January 1, 2009 (the "Second S-Period"). It then carried over the First S-Period's AAA and added it to the new 2009 AAA balance at the start of the Second S-Period. At the end of 2012, considering solely the AAA funds generated during its Second S-Period, LS Warehouse had a AAA balance of $17,563,554. But in 2013, LS Warehouse again reelected to become a C-corp and distributed $42,443,028—roughly the sum of its First and Second S-Period AAA balances—to its shareholders, of which Plaintiffs received $7,356,905. The IRS determined that $4,313,419 of the $7,356,905 was a taxable dividend rather than a tax-free AAA distribution.

LS Washington followed the same pattern of corporate changes as LS Warehouse. It was incorporated on April 12, 1968 and operated as a C-corp from inception until it elected to be classified as an S-corp on August 1, 1987 (the "First S-Period"). LS Washington continued operating as an S-corp from August 1, 1987

through December 31, 1991, when it reverted to a C-corp. As of December 31, 1991, LS Washington had a balance in its AAA of $19,862,658. During its PTTP in 1992, LS Washington distributed $10,225,694 to its shareholders. LS Washington operated as a C-corp from January 1, 1992 through December 31, 2008, and then reverted to an S-corp on January 1, 2009 (the "Second S-Period"). It then operated as an S-corp until December 31, 2012, at which time it elected to be a C-corp again. During its Second S-Period, LS Washington had accumulated a AAA of $15,104,172. It then distributed $24,692,889—roughly the sum of its First and Second S-Period AAA balances—to its shareholders during its 2013 PTTP, of which Plaintiffs received $2,180,376. The IRS determined that $850,941 of the $2,180,376 was a taxable dividend rather than a tax-free distribution.

Finally, there is LS Portland. It was initially incorporated as a C-corp in 1973 and first elected to be an S-corp from 1987 through 1993 (the "First S-Period") when it revoked its S status and reverted to a C-corp. It had a AAA balance of $56,645,199 at the end of its First S-Period and distributed $31,916,781 of it during its 1994 PTTP while operating as a C-corp. This left $22,728,418 of undistributed AAA. In 2004, however, LS Portland re-elected to become an S-crop (the "Second S-period") and assumed it could carry over the old AAA from the First S-period and calculated its starting AAA balance as $22,728,418. It then distributed $1,968,878 to its shareholders as a tax-free distribution in 2005. This lowered the old AAA balance to $20,759,540. It further accumulated $21,950,729 of new AAA during its Second S-

Period between 2004 and 2012. It re-elected to become a C-corp in 2013 and distributed $4,162,185 of its old AAA (out of the remaining $20,759,540) to Plaintiffs.

Plaintiffs believed that none of the 2013 distributions were taxable dividends because the distributions were already taxed when the Corporations were operating as S-corps. They initially calculated their 2013 tax liability under the United States' theory of the case. That is, their complaint suggests that they knew that the IRS may treat the Corporations' distributions as taxable so they included "disclosure statements with the relevant tax returns stating that [they believed] that the distributions from the Corporations' old AAA were nontaxable and [that they] intended to file claims for refund." Compl. at 6.

In April 2015, Plaintiffs filed a form 1040X and claimed a refund for the taxes paid under the theory that AAA never expires and was available for tax-free distribution once the Corporations began their Second S-Periods. Although the IRS first issued them a refund for $2,298,368, it then determined that the refund was issued mistakenly based on a 2014 IRS Chief Counsel Advice Memorandum (the "2014 Memorandum") after conducting an audit of Plaintiffs' tax returns. The 2014 Memorandum concluded that after the PTTP, undistributed AAA would not be available for distribution once a corporation re-elected to become an S-corp. Because Plaintiffs' claimed refund was inconsistent with the 2014 Memorandum, the IRS demanded payment of the $2,298,368.

Additionally, during the same audit, the IRS discovered that in 2005 LS Portland had another tax deficiency and now wants to tax an additional $357,488 of

Plaintiffs' income. The United States claims that LS Portland started its Second S-period in 2004 with a AAA balance of $0. As a result, it didn't have sufficient AAA funds to make its 2005 distribution of $1,968,878 tax-free. Although the United States doesn't explain its calculation, it claims that $1,783,025 of the $1,968,878 that LS Portland distributed in 2005 was taxable.

But the United States ran into a statute of limitations problem because the tax deficiencies stem from LS Portland's 2005 distribution. The United States concedes that "it was too late to assess the tax that should have been reported and paid for in 2005 [in 2013]." It thus reduced the AAA balance to a negative balance of ($1,968,878) in 2005. That negative balance was carried forward to reduce the new AAA available in 2013 and therefore made $1,783,025 of the distributions in 2013 taxable to LS Portland's shareholders, with $357,488 being Plaintiffs' pro rata share.

In July 2017, the IRS issued an audit report that added $9,684,033 of taxable qualified dividends to Plaintiffs' taxable income. Plaintiffs paid the tax attributable to these qualified dividends in August 2017 but filed for a refund. The IRS rejected their refund request two months later and Plaintiffs filed a complaint for refund in this Court in December 2017. The parties have filed a Joint Stipulation of Facts and cross motions for summary judgment. Plaintiffs have only moved for summary judgment on the statutory interpretation issue while the United States has moved for summary judgment on both the statutory interpretation issue and the statute of limitations issue. The parties also requested oral argument, which was held earlier this year.

## LEGAL STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, and material only if the fact may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In this analysis, the Court draws all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1018 (9th Cir. 2010). Unsupported conjecture or conclusory statements, however, cannot defeat summary judgment. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).

## DISCUSSION

There are two issues before me: (i) whether under the relevant statutory language a corporation that doesn't distribute all of its AAA within the PTTP can still distribute its remaining AAA balance tax-free if it reelects to become an S-corp, and (ii) whether the statute of limitations bars the United States from collecting tax on certain improperly distributed AAA funds by LS Portland in 2005. The parties agree that there are no disputes of material fact and the only issues here are disputes of law. *See* Joint Stipulation of Facts (doc. 19).

## I.      Undistributed AAA and the PTTP

Plaintiffs argue that any AAA funds that were not distributed to shareholders during the PTTP are still distributable on a tax-free basis if a corporation becomes

an S-corp sometime in the future. Plaintiffs' position centers on four core arguments. First, they argue that their interpretation of the AAA and PTTP provisions is supported by the relevant statutory texts: §§ 1368(e), 1371, and 1377. Second, they argue that their interpretation is supported by the relevant legislative history. Third, they argue that the United States' position has the added disadvantage of being inconsistent with § 1371(f) of the Tax Cuts and Jobs Act, which Congress passed in 2017. Finally, they argue that the Court should not give persuasive weight to the IRS opinion and tax treatises relied on by the United States.

### A. The Statutory Texts

Plaintiffs argue that the plain language of § 1368(e) does not require AAA to be reset to $0 at the start of a new S-period. They read § 1368(e) simply to mean that adjustments to AAA balances are only permissible during an S-period. Under this reading, a corporation can toggle between being an S-corp and C-corp as often as it would like and still maintain the ability to disperse its AAA funds tax free whenever it operates as an S-corp. Plaintiffs further interpret the PTTP provisions in § 1371 and § 1377 as providing a one-year period for AAA distributions after an S-corp elects to become a C-corp. But since the AAA doesn't reset to $0 at the start of a new S-period, a corporation is free to distribute any AAA that it chose to not distribute during its most recent PTTP by simply reelecting to operate as an S-corp.

Plaintiffs' textual analysis is unconvincing. Although they characterize their argument as a plain meaning argument, their true position is that one shouldn't read a prohibition into a statute unless it's explicit. But, even absent an explicit

prohibition, a careful parsing of § 1368(e)(1) and (e)(2) suggests that Plaintiffs are incorrect.

The AAA is a term of art within subchapter S. *11 Mertens, Law of Federal Income Taxation* (2018) § 41B.184, p. 268. For a AAA to exist at all, therefore, it must meet the definition of AAA within subchapter S. Section 1368(e)(1) provides this definition in § 1368(e)(1)(A) and then defines the term "S-period" in (e)(2):

> [(e)](1)[—]In general, [e]xcept as otherwise provided in this paragraph, the term "accumulated adjustments account" means an account of the S corporation which is adjusted for the S period in a manner similar to the adjustments under section 1367 . . . and no adjustment shall be made for Federal taxes attributable to any taxable year in which the corporation was a C corporation.
>
> . . .
>
> [(e)](2)[—]The term "S period" means the most recent continuous period during which the corporation has been an S corporation. Such period shall not include any taxable year beginning before January 1, 1983.

26 U.S.C. § 1368(e).

Section 1368(e)(1) provides this definition and defines AAA as an account "of *the S corporation* which is adjusted for *the S period* . . . similar to the adjustments under section 1367." The phrase "of the S corporation" implies that the AAA can necessarily only exist while there is an S corporation in existence, *i.e.*, a AAA does not continue to exist after the S-corp becomes a C-corp. Otherwise, the AAA would not belong to the S-corp and therefore cannot be "of the S corporation." This is the only interpretation that gives effect to the phrase "of the S corporation," and precludes allowing Plaintiffs to carry over AAA from previous S-periods absent an exception to this general rule, *e.g.*, if the shareholder distribution is within the PTTP.

Additionally, Section 1368(e)(2) defines an "S-period" as "the most recent *continuous* period" during which the corporation was an S-corp. The existence of the word "continuous" is significant. Congress's decision to include the word implies that once an S-period ends, the AAA's tax-free status should also end. Otherwise, Congress could have chosen to define an S-period as any period that a corporation operates as an S-corp without regard to whether that period has been continuous. If the word is to have any effect at all, it would have to imply that an S-period is a discrete period with a clear beginning and a clear end. Once the corporation stops operating as an S-corp, it will break its continuity. That is, if an S-period exists, it has to have started at the most recent S-corp election and end as soon as the corporation is no longer an S-corp by ending as soon as the S-corp designation is not "continuous." That said, since we are to construe provisions so as to give effect to every word, it makes more sense to interpret § 1368(e) as only allowing a AAA balance to exist during "the corporation's most recent sojourn through subchapter S," as stated by one tax treatise. *See* 11 *Mertens Law of Federal Income Taxation*, § 41B:185 (2018). Thus, the text of § 1368(e)(2) also counsels against adopting Plaintiffs' interpretation.

One could argue that § 1368(e)(1) only requires that AAA adjustments be made during S-periods since the statute says "[AAA] means an account of the S corporation which *is adjusted* for the S period." *See* 26 U.S.C. § 1368(e)(1). Since it does not say that AAA only exists during S-periods, Plaintiffs urge the Court to conclude that 1368(e)(1) does not bar carrying over the balance of undistributed AAA from past S-

periods—it is just a provision that forces adjustments to AAA to happen during S-periods.

But Congress's decision to forgo added clarity with respect to a restriction does not necessarily mean that the restriction is absent. Put another way, even if adding the word "only" would have altered the meaning of the statute, the lack of the word only doesn't provide an independent reason to find Plaintiffs' interpretation as well-supported. It just provides a disadvantage to the United States' interpretation that the United States can overcome if their interpretation has other affirmative support.

Here, the United States' position is also supported by the PTTP provisions of the United States Code. *See* 26 U.S.C. §§ 1371, 1377. Section 1377(b) defines PTTP as a one-year period after a corporation is no longer an S-corp:

> the term "post-termination transition period" means [] the period beginning on the day after the last day of the corporation's last taxable year as an S corporation and ending on the later of [] the day which is 1 year after such last day, or [] the due date for filing the return for such last year as an S corporation[.]

26 U.S.C. § 1377(b)(1)(A). The next relevant section, § 1371(e), allows a C-corp formerly operating as an S-corp to distribute money up to the value of the AAA on a tax-free basis during the PTTP:

> Any distribution of money by corporation with respect to its stock during a [PTTP] shall be applied against and reduce the adjusted basis of the stock, to the extent that the amount of the distribution does not exceed the [AAA] (within the meaning of section 1368(e)).

*See* 26 U.S.C. 1371(e)(1).

But why have a PTTP—a designated period for tax-free distributions—if not to have it serve as an expiration date for distributing AAA funds tax-free? And if Congress was okay with AAA carryovers from previous S-periods for distribution during new S-periods, why force a corporation to reelect to become an S-corp at all? A simpler approach would just be to allow AAA distributions indefinitely as long as funds are available. None of the cited evidence suggests that Congress wanted to encourage toggling between S-corps, C-corps, and back again. It seems more sensible to interpret the PTTP to simply allow for a reasonable time for the corporation to distribute its AAA to shareholders. The existence of the PTTP, then, signifies that Congress envisioned it to be the exclusive time for distributing AAA funds when an S-corp elects to become a C-corp.

Another issue with Plaintiffs' statutory interpretation argument is the scant support for it. The only case that Plaintiffs cite to support their interpretation is *Colorado Gas Compression, Inc. v. Commissioner of Internal Revenue*, which materially differs from this case. *See* 366 F.3d 863 (10th Cir. 2004). The issue in *Colorado Gas* was whether taxpayer-favorable capital-gains provisions that were part of the "transitional rules" of an earlier bill were also available to S-corps that toggled between S-corps and C-corps or whether they were only available to S-corps that maintained their S status while the transitional rules were operative. *Id.* at 867. The court ruled that the transitional rules only required a company to meet the definition of a "qualified corporation" and placed no restrictions on toggling between

S and C entities. The court thus found that Colorado Gas could invoke these rules because it was a "qualified corporation" under the plain meaning of the statute.

But the issue in that case was whether the plain meaning of the statute *shouldn't* control, and the court thought that it should. Here, by contrast, the plain meaning of § 1368(e) doesn't support Plaintiffs' interpretation, and there are other reasons to think that their interpretation is incorrect. Unlike *Colorado Gas*, where the court found the taxpayer's interpretation to be "fairly within the statutory language and . . . in harmony with the statute as an organic whole," Plaintiffs' interpretation is simply not in similar harmony. *See id.* at 867–68. It is not in harmony with the PTTP provisions and requires an unsupported reading of the AAA provisions. And as explained more fully below, it is undermined by three tax treatises and the relevant legislative history. Thus, I don't find *Colorado Gas* to be sufficiently analogous and find Plaintiffs' statutory interpretation arguments unconvincing.

### B. Legislative History

Plaintiffs also point to legislative history from both Congressional chambers to support their interpretation of § 1368(e). They point to a House Report and a Senate Report to argue that the 1982 tax-code reforms that led to the AAA/PTTP system were meant to help taxpayers and therefore should be construed in their favor. *See* H.R. REP. NO. 97-826 (1982); S. REP. NO. 97-640 (1982).

The legislative history is unpersuasive. Plaintiffs cite language in a Senate Report from the Committee on Finance for the proposition that Congress's "main goal" was to ensure that S-corps could "easily distribute all of their earnings tax-free."

Pls.' MSJ at 20. But the Senate Report's language does not support that characterization—a fairer reading reveals that the report was simply conveying that Congress wanted the new tax provisions to address previous traps for the unwary that discouraged small corporations from profiting from these rules. *See* S. REP. NO. 97-640 at 6 (1982). Additionally, the paragraph immediately preceding the one cited by Plaintiffs shows that the report was just as concerned with filling in loopholes as ensuring that corporations would have greater clarity about how subchapter S operates. *See id.* (stating that "[t]he history of subchapter S also indicates that knowledgeable taxpayers may have derived some unintended benefits from the subchapter S provisions."). Thus, the Senate Report is unavailing.

Plaintiffs also point to a line in the House's Committee on Ways and Means Report to support their interpretation. That line states "under the bill, shareholders of subchapter S corporations with accumulated earnings and profits *will be assured* of tax-free treatment with respect to distributions, regardless of when made." H.R. REP. NO. 97-826, at 19 (1982). The "regardless of when made" language does support an interpretation of the § 1368(e) that allows a corporation to carry AAA balances forward from previous S-periods. But, absent more evidence, such general statements cannot resolve the statute's meaning. The fact is that the PTTP created a one-year timeframe for distributing AAA funds after an S-corp becomes a C-corp. It makes sense to interpret this as the only time when an S-corp can distribute its AAA funds tax-free. Three tax treatises and an IRS opinion, all of which are

discussed below, affirm this interpretation. Without more, the Court cannot give the House Report's general purposive pronouncements dispositive weight.

Finally, the legislative history cited by the United States explains that the American Bar Association ("ABA") had advocated for an unlimited tax-free AAA withdrawal period once an S-corp elects to become a C-corp. The ABA stated

> The permitted one-year period for withdrawing S year undistributed income is too short for an operating company. The shareholders in small corporations . . . would never be able to withdraw previously taxed but undistributed income except when their stock in the corporation is sold.

*See Subchapter S Revision Act of 1982: Hearing before the Senate Finance Committee,* 97th Cong. 2d Sess. 167 (1982) (American Bar Association's suggested technical changes to the Subchapter S Revision Act of 1982). Despite its possible negative effects on smaller corporations, Congress rejected the ABA's suggestion and the current PTTP provision has a clear one-year expiration period. *See* 26 U.S.C. § 1371(e). This indicates that the interpretation that Plaintiffs are advocating for was proposed, discussed, and rejected in favor of a more restrictive approach.

Interestingly, Plaintiffs concede that "it makes complete sense to limit the PTTP, because otherwise C-corps would be able to make tax-free distributions of S-corp earnings at any time." According to them, this would be bad because it would "blur[] the lines between subchapter C and subchapter S." But they fail to explain why Congress would think it more sensible to require a corporation to toggle between C and S status to keep distributing its old S-corp AAA balance tax-free. The Court is also unable to find a sensible justification for the interpretation advocated for by Plaintiffs. Thus, it seems more likely that the AAA resets to $0 after the PTTP

Page 16 – OPINION AND ORDER

expires rather than only being available for tax-free distribution if the corporation reelects to become an S-corp.

## C. Section 1371(f) of the Tax Cuts & Jobs Act

Plaintiffs argue that interpreting AAA to expire after the PTTP would be inconsistent with § 1371(f). In their view, if AAA expires after the PTTP, then it can't logically be available for distribution if the corporation meets the requirements of § 1371(f)—a provision that allows for further tax-free distributions of AAA funds even after the PTTP expires.

This characterization of § 1371(f) is flawed. As the text of that section makes clear, Congress added this provision with the passage of the Tax Cuts and Jobs Act to allow a subset of S-corps to distribute money out of their AAA after the PTTP expires:

> In the case of a distribution of money by *an eligible terminated S corporation* . . . after the [PTTP], the [AAA] shall be allocated to such distribution, and the distribution shall be chargeable to accumulated earnings and profits, in the same ratio as the amount of such accumulated adjustments account bears to the amount of such accumulated earnings and profits.

26 U.S.C. § 1371(f) (emphasis added). Section 481(d) defines an eligible terminated S corporation as "a C corporation which was an S corporation on the day before . . . *the enactment of the Tax Cuts and Jobs* Act and during the 2-year period beginning on the date of such enactment [decides to revoke] its election" (emphasis added).

Section 1371(f), then, seems to be a prophylactic measure against unwanted consequences of the Tax Cuts and Jobs Act for certain S-corps. It is a narrow exception for certain S-corps that were not prepared for the effect of the new

Page 17 – OPINION AND ORDER

legislation, so Congress provided these corporations with a two-year window to decide whether to revoke their S-election. After this two-year window expires, a corporation will no longer meet the definition in § 481(d) and will be stuck with the default rule of no tax-free AAA distributions after the expiration of its PTTP. Section 1371(f) is thus compatible with the general rule that AAA funds expire at the end of the PTTP.

### D. The Tax Treatises & IRS Opinion

The United States cites several tax treatises and an IRS legal opinion in support of its interpretation of the relevant IRC provision. Plaintiffs argue that the Court should ignore these tax treatises because they are conclusory and not binding on the Court. They also argue that the 2014 Memorandum should be disregarded because it is poorly reasoned.

Neither argument is persuasive. The United States cites the following treatises in support of its interpretation: (1) *Mertens Law of Federal Income Taxation*, (2) *Standard Federal Tax Reporter*, and (3) *S Corporations: Federal Taxation*. I find their consistency in supporting the United States' interpretation to be persuasive.

*Mertens* is one of the most commonly cited tax treatises and the Ninth Circuit has cited it approvingly many times. *See, e.g., Texaco, Inc. v. United States*, 528 F.3d 703, 705–08 (9th Cir. 2008); *Merkel v. C.I.R.*, 192 F.3d 844, 847–48 (9th Cir. 1999). Plaintiffs criticize *Mertens* for not sufficiently explaining why AAA funds should be reset at $0 once a new S-period starts. While not citing legislative history or closely parsing § 1368(e), *Mertens* still provides sufficient explanation. It states that the purpose of the AAA is to provide a mechanism for S-corps to make tax-free

distributions of their already taxed income from their "most recent sojourn through subchapter S." 11 *Mertens Law of Federal Income Taxation,* § 41B:185 (2018). It further explains that these funds can only be distributed tax-free during a "limited period of time" and that the PTTP functions as that limited period. *Id.* at § 41B:193. Although on occasion *Mertens* has pointed to areas of unsettled law, *see, e.g.,* 14A *Mertens Law of Federal Income Taxation* § 54:6 (2018) ("It is not clear whether the taxpayer can take into account contingent liabilities or contested liabilities"), it is notable that *Mertens* did not point to any ambiguity or reason to doubt its interpretation here. *See* § 41B:193.

The second treatise cited by the United States is the *Standard Federal Tax Reporter.* Plaintiffs characterize its analysis as conclusory but the treatise directly supports the United States' interpretation as it states "[i]f the AAA is not exhausted by the end of the [PTTP], it disappears." 13 *Standard Federal Tax Reporter* ¶ 32,121.04 (2018). The treatise also explains its position by pointing to the relationship between AAA balances and the stockholders' basis in the stock. *See id.* at ¶ 32,121.045. It explains that AAA distributions are mechanically tax-free because shareholders increase the basis in their stock by the value of the after-tax income once the value of the distribution is taxed to the shareholders. *Id.* This increase in basis does not change while the corporation is a C-corp even after the PTTP expires. *Id.* Because income to shareholders is only taxed if its value is above the shareholder's basis in their stock, the fact that the AAA value is continually reflected in the shareholders' basis means that the funds are simply moved below the

accumulated earnings and profits ("E&P") of the C-corp. *Id.* Consequently, once the C-corp distributes its E&P, any further distribution would constitute a return of the shareholders' basis in their stock and therefore not taxable. *Id.* Given this mechanism in eventually returning the AAA funds to the shareholders tax-free, it makes sense to interpret the PTTP as providing a temporary to exception to the general rule that would make AAA funds inaccessible tax-free once the S-corp becomes a C-corp.

The final treatise cited by the United States is *S Corporations: Federal Taxation.* I find this treatise less persuasive than the others because although it directly supports the United States' interpretation, it cites the 2014 Memorandum that the United States already cites in its motion for summary judgment. That is, the justification for this treatise's interpretation of § 1368(e) only seems to be a default to the IRS interpretation. Even so, the treatise does not dispute or question the 2014 Memorandum or point to any flaws in its reasoning. For that reason, it supports the proposition that the United States' interpretation has gained acceptance by yet another treatise while Plaintiffs have not pointed to a single treatise that supports their interpretation.

Although no single treatise is dispositive on which interpretation of the effect of the PTTP on AAA is more reasonable, the fact that all treatises agree on this issue is persuasive evidence that the United States' interpretation is likely correct.

Finally, as mentioned above, the United States relies on a 2014 Memorandum that concludes that AAA funds expire if the corporation does not distribute them

Page 20 – OPINION AND ORDER

within the PTTP. *See* IRS Chief Counsel Advice No. 201440621 (Nov. 14, 2014). I find the 2014 Memorandum persuasive. Plaintiffs insist that the opinion deserves little weight because it lacks thoroughness. They cite a recent Ninth Circuit case, *Voss v. Commissioner*, which declined to embrace an IRS opinion's position on a different issue, for the proposition that an IRS opinion is only entitled to a "measure of deference proportional to the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade." *Voss v. Comm'r*, 796 F.3d 1051, 1070 (9th Cir. 2015). But the 2014 Memorandum is not susceptible to the same criticisms as the IRS opinion at issue in *Voss*.

First, the majority in *Voss* found the IRS opinion to be too limited in statutory analysis to warrant acceptance ("the 2009 Chief Counsel Advice is hardly thorough . . . its analysis interpreting how the statute should apply to unmarried co-owners consists of just one paragraph."). *Id.* at 1066. The 2014 Memorandum, by contrast, includes over a dozen paragraphs of legal analysis over the course of four pages. *See generally*, 2014 Memorandum. It assesses the interplay between the AAA provision of § 1368(e)(2) and Section 1.1368-2(a)(1) of the Treasury Regulations and concludes that since S-periods are by definition "continuous," it makes more sense for the AAA to reset at zero at the start of a new S-period. *Id.* at 6. It further traces the legislative history of the AAA provisions and analogizes the concept to a predecessor concept of "undistributed taxable income previously taxed to shareholders (PTI)." *Id.* at 5. It also points out that the existence of a PTTP implies that a corporation cannot make

any further tax-free distributions from the AAA once the PTTP expires. *Id.* at 6. Consequently, I find the 2014 Memorandum thorough enough to warrant deference and much more thorough than the IRS opinion that *Voss* criticized.

Second, the majority in *Voss* further distinguished that case from the Supreme Court decision in *Hall v. United States*, 566 U.S. 506 (2012), where the Supreme Court "'s[aw] no reason to depart from those established understandings' of bankruptcy courts, bankruptcy commentators, and the IRS's consistent position for over a decade in an IRS Chief Counsel Advice Memorandum, the Internal Review manual, and an IRS Litigation Guideline memorandum." *Voss*, 796 F.3d at 1066 (citing *Hall* at 517). Unlike in *Hall*, the *Voss* majority found "no comparable consensus" because the IRS opinion was only six years old and was the IRS's only pronouncement on the issue. *Id.*

Here, although the IRS memorandum was only published in 2014, three major tax treatises have accepted its analysis—at least some of which arrived at the same conclusion before the publication of the 2014 Memorandum. And Plaintiffs have not pointed to any support for their interpretation beyond elementary statutory analysis and general policy goal pronouncements in two congressional reports. The 2014 Memorandum, then, seems much closer to the type of opinion that the Supreme Court in *Hall* found persuasive than to the opinion that the 9th Circuit in *Voss* rejected. Thus, I find the analysis in the 2014 Memorandum worthy of deference.

## II.  Statute of Limitations

Plaintiffs argue that 26 U.S.C. § 6501 bars collection of any back-taxes outside that provision's three-year limitations period. They explain that the United States should not be allowed to sidestep this limitations period by carrying forward LS Portland's AAA deficit in 2005 and applying it to its 2013 AAA distribution. The United States responds that courts can examine tax liability for a year not in suit to better determine the correct tax liability for a year in suit; it explains that although § 6501 bars tax "assessments" outside the statute of limitations, it doesn't bar "recalculations," which is how the United States characterizes its approach. For that reason, the United States argues that it can recalculate taxable income in a year beyond the statute of limitations to determine tax liability within the limitations period.

Section 6501 of the IRC requires the IRS to assess any taxes within three years after a return is filed. *See* 26 U.S.C. § 6501(a). Since the United States wanted to tax LS Portland's 2005 distribution in 2013, and doing so would have been outside the applicable statute of limitations, it needed to find a way to account for LS Portland's back-taxes in 2013. In response to Plaintiffs' argument, the United States explains

> But the IRS did not assess and collect tax for 2005. It *recomputed* LSTC Portland's ending AAA in 2005 and carried it forward to the next S period. The IRS then determined that additional tax was owed for 2013 because the final S-period AAA (that is, New AAA) was lower than the Tomseths' computation.

Def.'s MSJ at 16 (emphasis added). So, the question becomes whether the United States' recomputation was permissible under § 6501.

It was not. As the United States explains, "no authority is directly on point." *Id.* But the authorities that do exist counsel against greenlighting the United States' approach. The United States is trying to have it both ways. On the one hand, it wants the AAA to expire at the end of the PTTP to avoid giving Plaintiffs a tax benefit. On the other hand, it wants the AAA balance to carry forward after the PTTP so that it can collect back-taxes on the 2005 distribution.

The treasury regulations, however, state that the AAA generally cannot be reduced below zero. *See* Treas. Reg. § 1.1368-2(a)(3). While § 1.1368-2(a)(2)(ii) includes language that permits the AAA to be reduced below zero in some circumstances—if the decrease is based on what § 1366 allows, is a certain nondeductible expense, or is a depletion deduction based on oil and gas—the United States does not base its argument on this section. Thus, to the extent that LS Portland's 2005 AAA balance was insufficient to cover its 2005 distributions, that deficit cannot be chargeable to the AAA account. This is because § 1.1368-2(a) explains that AAA decreases must be done in "in the manner provided by paragraph (a)(3) of this section." *See* Treas. Reg. § 1.1368-2(a). And § 1.1368-2(a)(3) does not permit LS Portland's 2005 AAA balance to be recomputed to create a negative balance that can be carried forward and applied against LS Portland's 2013 AAA balance.

Yet the United States argues that its approach is analogous to permissible recalculations of tax liability, even outside the limitations period. Specifically, the

Page 24 – OPINION AND ORDER

United States analogizes its approach to net operating loss ("NOL") carry forwards. These are losses that an unprofitable corporation can carry forward to decrease its tax liability in future years. *See* 26 U.S.C. § 172; *see also Metro One Telecomm., Inc. v. C.I.R.*, 704 F.3d 1057, 1060 (9th Cir. 2012). Alternatively, it analogizes its approach to investment credit carryovers, which are earned but unused tax credits that a corporation can carry forward for use in later years. *See* 26 U.S.C. § 39; *see also Metro One, supra.* Since the IRS is allowed to calculate a corporation's taxes within the limitations period by considering a corporation's NOLs or investment credit carryovers outside of the limitations period, the United States argues that the same should be allowed for AAA funds.

I disagree. While similar to one another, neither of these two concepts are analogous enough to the operation of AAA accounts. With respect to NOLs, the cited cases distinguish between assessments and calculations—with § 6501 barring the government from collecting taxes after the three-year statute of limitations but not disallowing recalculating tax in those years for collecting the tax in a different year. *See, e.g., Barenholtz v. United States*, 784 F.2d 375, 380–81 (Fed. Cir. 1986) ("It is well settled that the IRS and the courts may recompute taxable income in a closed tax year in order to determine tax liability in an open year."). The cases then allow for recalculating NOLs in tax years outside the three-year statute of limitations. But the issue is that unlike NOLs, which are by definition a negative balance, AAA funds cannot be negative in subsequent S periods. *See* Def.'s MSJ at 14 ("[w]here a corporation re-elects S corporation status . . . the AAA resets to zero at the end of the

post-termination transition period.") (*citing* 11 Mertens Law of Federal Income Taxation § 41B:187, n.1 (Jan. 2018 Supp.). And NOLs are unique because they have to be tracked on the corporation's books from year to year for a corporation to be able to take advantage of them. *See Barrick Resources (USA) Inc. v. United States*, 529 F.3d 1252, 1254 (2008) (explaining that 26 U.S.C. § 172(b) "allows a business to apply net operating losses to profits realized in prior or future tax years . . . by enabling a taxpayer to set off its lean years against its lush years and to strike something like an average taxable income.") (citations and internal quotation marks omitted). But this cannot be the case for AAA funds if the PTTP expires and the corporation reverts to being an S-corp because at that point the AAA resets at $0. Therefore, analogizing to NOLs doesn't suffice here as a AAA balance cannot be reduced below $0, and even if it could, the start of a new S period would reset the AAA to $0.

As for the investment credit, the United States cites Tax Court authority that allows the IRS to recompute taxable income for a year within the statute of limitations by recalculating tax liability outside the limitations period and carrying forward unused investment credits. *See Mennuto v. Comm'r*, 56 T.C. 910, 923 (1971). But Tax Court cases aren't binding, and only one other case has cited the IRS revenue ruling that *Mennuto* relies on in the nearly 50 years since *Mennuto*'s publication. And that case analogizes to NOLs, which is problematic for the reasons explained above. *See generally Hill v. Comm'r*, 95 T.C. 437 (1990). Another Tax Court case cited by the United States is about adjusting stock basis value in years outside the statute of limitations. *See Goldsmith v. Comm'r*, T.C. Memo. 2017-20, at n.6. But unlike AAA

funds, basis calculations are inherently tied to actions taken by taxpayers in previous years while AAA funds by definition start at $0 at the start of every new S-period. Finally, the United States cites an Oregon Tax Court case, *Int'l Health & Life Ins. Co. v. Dept. of Revenue*, 5 OTR 320 (1973), *aff'd on other grounds*, 269 Or. 23 (1974), but that case wasn't interpreting § 6501. The court in that case made an exception to the Oregon limitations statute because it found the statute to be intertwined with the federal refund deadlines. *See id.* at 330–31. That is not the case here.

In short, neither NOLs, investment credit carryovers, nor any of the other concepts cited by the United States are sufficiently analogous for this Court to allow the United States to tax Plaintiffs' income outside of the limitations period. Here, LS Portland was in a new S period when it made the 2013 distributions to shareholders. At that point, any unused AAA from the previous S period that was not distributed during the previous PTTP had disappeared, and there was no negative AAA balance to carry over to the most recent S period. Thus, the United States' tax on LS Portland was outside the limitations period and Plaintiffs are owed a refund.

## CONCLUSION

The Court GRANTS IN PART and DENIES IN PART the United States'
Motion for Summary Judgment (doc. 19). The motion is granted with respect to the
statutory interpretation issue but denied with respect to the statute of limitations
issue. Plaintiffs' summary judgment motion (doc. 21) is DENIED AS MOOT.

IT IS SO ORDERED.

Dated this 27th day of September 2019.

_____
Ann Aiken
United States District Judge